UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
FORT MYERS DIVISION

JESSE R. CURLEE,

    Plaintiff,

v.                                     Case No: 2:17-cv-164-FtM-DNF

NANCY A. BERRYHILL, ACTING
COMMISSIONER OF SOCIAL
SECURITY,

    Defendant.
_____

## OPINION AND ORDER

Plaintiff, Jesse R. Curlee, seeks judicial review of the final decision of the Commissioner of the Social Security Administration ("SSA") denying his claim for a period of disability, Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI"). The Commissioner filed the Transcript of the proceedings (hereinafter referred to as "Tr." followed by the appropriate page number), and the parties filed a joint legal memorandum setting forth their respective positions. For the reasons set out herein, the decision of the Commissioner is **AFFIRMED** pursuant to § 205(g) of the Social Security Act, 42 U.S.C. § 405(g).

    **I.    Social Security Act Eligibility, Standard of Review, Procedural History, and the ALJ's Decision**

    **A.    Social Security Act Eligibility**

The law defines disability as the inability to do any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months. 42 U.S.C. §§ 416(i), 423(d)(1)(A), 1382(a)(3)(A); 20 C.F.R. §§ 404.1505, 416.905. The

impairment must be severe, making the claimant unable to do his previous work, or any other substantial gainful activity which exists in the national economy. 42 U.S.C. §§ 423(d)(2), 1382(a)(3); 20 C.F.R. §§ 404.1505-404.1511, 416.905-416.911.

### B. Standard of Review

The Commissioner's findings of fact are conclusive if supported by substantial evidence. 42 U.S.C. § 405 (g). "Substantial evidence is more than a scintilla and is such relevant evidence as a reasonable person would accept as adequate support to a conclusion. Even if the evidence preponderated against the Commissioner's findings, we must affirm if the decision reached is supported by substantial evidence." *Crawford v. Comm'r*, 363 F.3d 1155, 1158 (11th Cir. 2004) (citing *Lewis v. Callahan*, 125 F.3d 1436, 1439 (11th Cir. 1997)); *Martin v. Sullivan*, 894 F.2d 1520, 1529 (11th Cir. 1990). In conducting this review, this Court may not reweigh the evidence or substitute its judgment for that of the ALJ, but must consider the evidence as a whole, taking into account evidence favorable as well as unfavorable to the decision. *Martin v. Sullivan*, 894 F.2d 1329, 1330 (11th Cir. 2002); *Foote v. Chater*, 67 F.3d 1553, 1560 (11th Cir. 1995). However, the District Court will reverse the Commissioner's decision on plenary review if the decision applied incorrect law, or if the decision fails to provide sufficient reasoning to determine that the Commissioner properly applied the law. *Keeton v. Dep't of Health & Human Servs.*, 21 F.3d 1064, 1066 (11th Cir. 1994). The Court reviews de novo the conclusions of law made by the Commissioner of Social Security in a disability benefits case. Social Security Act, § 205(g), 42 U.S.C. § 405(g).

The ALJ must follow five steps in evaluating a claim of disability. 20 C.F.R. §§ 404.1520, 416.920. At step one, the claimant must prove that he is not undertaking substantial gainful employment. *Doughty v. Apfel*, 245 F.3d 1274, 1278 (11th Cir. 2001), *see* 20 C.F.R. §

404.1520(a)(4)(i). If a claimant is engaging in any substantial gainful activity, he will be found not disabled. 20 C.F.R. § 404.1520(a)(4)(i).

At step two, the claimant must prove that he is suffering from a severe impairment or combination of impairments. *Doughty*, 245 F.3d at 1278, 20 C.F.R. § 1520(a)(4)(ii). If the claimant's impairment or combination of impairments does not significantly limit his physical or mental ability to do basic work activities, the ALJ will find that the impairment is not severe, and the claimant will be found not disabled. 20 C.F.R. § 1520(c).

At step three, the claimant must prove that his impairment meets or equals one of impairments listed in 20 C.F.R. Pt. 404, Subpt. P. App. 1; *Doughty*, 245 F.3d at 1278; 20 C.F.R. § 1520(a)(4)(iii). If he meets this burden, he will be considered disabled without consideration of age, education and work experience. *Doughty*, 245 F.3d at 1278.

At step four, if the claimant cannot prove that his impairment meets or equals one of the impairments listed in Appendix 1, he must prove that his impairment prevents him from performing his past relevant work. *Id*. At this step, the ALJ will consider the claimant's RFC and compare it with the physical and mental demands of his past relevant work. 20 C.F.R. § 1520(a)(4)(iv), 20 C.F.R. § 1520(f). If the claimant can still perform his past relevant work, then he will not be found disabled. *Id*.

At step five, the burden shifts to the Commissioner to prove that the claimant is capable of performing other work available in the national economy, considering the claimant's RFC, age, education, and past work experience. *Doughty*, 245 F.3d at 1278; 20 C.F.R. § 1520(a)(4)(v). If the claimant is capable of performing other work, he will be found not disabled. *Id*. In determining whether the Commissioner has met this burden, the ALJ must develop a full and fair record regarding the vocational opportunities available to the claimant. *Allen v. Sullivan*, 880 F.2d 1200,

1201 (11th Cir. 1989). There are two ways in which the ALJ may make this determination. The first is by applying the Medical Vocational Guidelines ("the Grids"), and the second is by the use of a vocational expert. *Phillips v. Barnhart*, 357 F.3d 1232, 1239 (11th Cir. 2004). Only after the Commissioner meets this burden does the burden shift back to the claimant to show that he is not capable of performing the "other work" as set forth by the Commissioner. *Doughty v. Apfel*, 245 F.3d 1274, 1278 n.2 (11th Cir. 2001).

### C. Procedural History

Plaintiff protectively filed an application for a period of disability and DIB on May 14, 2013. (Tr. 219-20). Plaintiff protectively filed an application for SSI on the same date. (Tr. 221-29). In both applications, Plaintiff alleged a disability onset date of March 3, 2011. (Tr. 219-20, 221-29). Plaintiff's applications were denied initially on July 24, 2013, and upon reconsideration on October 31, 2013. (Tr. 165-69, 172-76). Plaintiff requested a hearing and, on October 29, 2015, an administrative hearing was held before Administrative Law Judge William G. Reamon ("the ALJ"). (Tr. 55-90). On January 8, 2016, the ALJ entered a decision finding that Plaintiff was not disabled. (Tr. 37-48). Plaintiff filed a request for review which the Appeals Council denied on February 9, 2017. (Tr. 1-6). Plaintiff initiated this action by filing a Complaint (Doc. 1) on March 23, 2017.

### D. Summary of the ALJ's Decision

At step one of the sequential evaluation, the ALJ found that Plaintiff had not engaged in substantial gainful activity since March 3, 2011, the alleged onset date. (Tr. 40). At step two, the ALJ found that Plaintiff had the following severe impairments: lumbar spine stenosis with multilevel disc protrusions, lumbago, and sacroiliitis. (Tr. 40). At step three, the ALJ found that Plaintiff did not have an impairment or combination of impairments that meets or medically equals

the severity of any of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. (Tr. 42).

Before proceeding to step four, the ALJ found that Plaintiff had the residual functional capacity ("RFC") to

> light work as defined in 20 CFR 404.1567(b) and 416.967(b) with the following limitations: he can frequently climb ramps and stairs, but must never climb ladders, ropes, or scaffolds. He can frequently balance, but only occasionally stoop, kneel, crouch, and crawl. Finally, he must avoid exposure to unprotected heights or dangerous moving machinery.

(Tr. 42). At step four, the ALJ found that Plaintiff is capable of performing his past relevant work as a crew-truck driver as such work does not require the performance of work-related activities precluded by the claimant's RFC. (Tr. 46).

The ALJ continued to step five and made the alternative finding that considering Plaintiff's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that Plaintiff can perform. (Tr. 46). Relying on the testimony of a vocational expert, the ALJ found that Plaintiff could perform such jobs as outside deliverer, cashier II, and ticket seller. (Tr. 47). The ALJ concluded that Plaintiff had not been under a disability from March 3, 2011, the alleged onset date, through the date of the decision, January 8, 2016. (Tr. 48).

**II.      Analysis**

Plaintiff raises seven issues on appeal: (1) whether the ALJ erred by failing to find that Plaintiff's mental impairments were severe; (2) whether the ALJ erred by failing to properly weigh the opinion of treating physician Dr. Hughes; (3) whether the ALJ erred by relying on the testimony of the vocational expert regarding job numbers; (4) whether the ALJ erred by failing to properly evaluate Plaintiff's capacity for work on a regular and continuing basis; (5) whether the

ALJ erred by finding that Plaintiff had past relevant work as a crew-truck driver; (6) whether the ALJ erred by posing a hypothetical question that did not reflect Plaintiff's ADHD; and (7) whether the ALJ erred by failing to evaluate the degree to which Plaintiff would be expected to be off-task. The Court will address each issue in turn.

### a) Whether the ALJ erred by failing to find that Plaintiff's mental impairments were severe.

Plaintiff argues that the ALJ erred by failing to recognize Plaintiff's mental impairments as severe given that consultative examiner, Lori Chang, Psy.D., diagnosed attention deficit disorder and treating physician Douglas Hughes, D.O. assessed depressive disorder, generalized anxiety disorder, and ADHD. (Doc. 26 p. 10). Plaintiff notes that Dr. Hughes identified limitations on Plaintiff's ability to perform work functions resulting from mental impairments. (Doc. 26 p. 10). Plaintiff contends that the ALJ's failure to recognize Plaintiff's mental impairments as severe led to his failure to include restrictions related to these conditions in the RFC, resulting in a decision unsupported by substantial evidence. (Doc. 26 p. 13).

In response, Defendant argues that the ALJ found that Plaintiff had some severe impairments, thus satisfying the requirements of step two. (Doc. 26 p. 15). Further, Defendant argues that substantial evidence supports the ALJ's determination that Plaintiff's mental impairments were not severe. (Doc. 26 p. 15-18).

At step two, "[a]n impairment is not severe only if the abnormality is so slight and its effect so minimal that it would clearly not be expected to interfere with the individual's ability to work, irrespective of age, education or work experience." *McDaniel v. Bowen*, 800 F.2d 1026, 1031 (11th Cir. 1986). A severe impairment must bring about at least more than a minimal reduction in a claimant's ability to work, and must last continuously for at least twelve months. *See* 20 C.F.R. §§ 404.1505(a). This inquiry "acts as a filter" so that insubstantial impairments

will not be given much weight. *Jamison v. Bowen*, 814 F.2d 585, 588 (11th Cir. 1987). While the standard for severity is low, the severity of an impairment "must be measured in terms of its effect upon ability to work, and not simply in terms of deviation from purely medical standards of bodily perfection or normality." *McCruter v. Bowen*, 791 F.2d 1544, 1547 (11th Cir. 1986).

According to the Eleventh Circuit, "[n]othing requires that the ALJ must identify, at step two, all of the impairments that should be considered severe," but only that the ALJ considered the claimant's impairments in combination, whether severe or not. *Heatly v. Comm'r of Soc. Sec.*, 382 F.App'x 823, 825 (11th Cir. 2010). If any impairment or combination of impairments qualifies as "severe," step two is satisfied and the claim advances to step three. *Gray v. Comm'r of Soc. Sec.*, 550 F. App'x 850, 852 (11th Cir. 2013) (citing *Jamison v. Bowen*, 814 F.2d 585, 588 (11th Cir. 1987)).

In this case, despite not finding that Plaintiff had any severe mental impairments, the ALJ did find that Plaintiff's lumbar spine stenosis with multilevel disc protrusions, lumbago, and sacroiliitis were severe impairments. Thus, the ALJ satisfied the threshold requirement of step two and committed no error by failing to find that Plaintiff's mental impairments were severe.

**b) Whether the ALJ erred by failing to properly weigh the opinion of treating physician Dr. Hughes.**

Plaintiff argues that the ALJ erred by giving little weigh to the opinion of treating physician Dr. Hughes. (Doc. 26 p. 18). Plaintiff contends that the ALJ failed to provide good cause for rejecting Dr. Hughes' opinion. (Doc. 26 p. 18-22). Specifically, Plaintiff argues that the ALJ erred by failing to address Plaintiff's impairment in color vision and Plaintiff's limitation on the use of his fingers. (Doc. 26 p. 21). In response, Defendant contends that the ALJ provided good cause for assigning little weight to Dr. Hughes' opinion. (Doc. 26 p. 22).

The record shows that Dr. Hughes completed a Medical Source Statement ("MSS") on Plaintiff's behalf on October 5, 2015. (Tr. 611-12). Dr. Hughes opined that Plaintiff could lift less than 10 pounds occasionally and frequently; could stand and walk for a total of 15 minutes in an 8-hour workday; could sit for a total of 45 minutes in an 8-hour workday; could climb, stoop, bend, and crouch less than 1/3 of the workday; could crawl 1/3 of the workday; could balance and kneel 2/3 of the workday; could finger and feel 1/3 of the workday; could reach in all directions 2/3 of the workday; must for medical reasons take a 30-minute break every 20 minutes; is moderately impaired in color vision of the left eye; has limitations due to pain; would be expected to lie down 2 hours in the morning and 3 hours in the afternoon; suffers from depression and ADHD; could concentrate, follow simple instructions, remember simple instructions, and deal with changes in a routine work setting less than 1/3 of the workday; could understand simple instructions and respond to supervision, coworkers, and usual work situations 1/3 of the workday; could carry out simple instructions 2/3 of the workday; would be expected to be off-task 50% to 60% of the time; and would be expected to miss 3 days of work a month for doctors' appointments or medical impairments. (Tr. 611). Dr. Hughes stated that his opinions were provided within a reasonable degree of medical certainty, Plaintiff's condition had existed since March 3, 2011, and he had read the medical records before and after the onset date of disability. (Tr. 612).

In his decision, the ALJ addressed Dr. Hughes' opinion as follows:

> Douglas S. Hughes, D.O., the claimant's treating physician, completed a medical source statement on October 5, 2015. Dr. Hughes opined that the claimant can lift and/or carry less than ten pounds, stand and/or walk for a total of 15 minutes, and sit for a total of 45 minutes with additional postural and manipulative restrictions. Dr. Hughes further opined that the claimant must take a break every 20 minutes for 30 minutes and lie down for two hours in the morning and 3 hours in the afternoon to relieve pain. Finally, Dr. Hughes opined that the claimant has mental restrictions and would be off task 50 to 60 percent of the day and be absent from work three days a month (18F). The undersigned gives little weight to Dr.

> Hughes opinion as the medical evidence of record, including repeatedly unremarkable physical examinations completed by Dr. Hughes, do not demonstrate limitation as restrictive as Dr. Hughes contends (5F/5-6; 9F/5; 10F/2; 14F/7, 10, 11, 14, 22; 16F/2, 7; 17F/4, 9, 11-12).

(Tr. 45).

"The Secretary must specify what weight is given to a treating physician's opinion and any reason for giving it no weight, and failure to do so is reversible error." *MacGregor v. Bowen,* 786 F.2d 1050, 1053 (11th Cir. 1986) (citation omitted). The Eleventh Circuit has held that whenever a physician offers a statement reflecting judgments about the nature and severity of a claimant's impairments, including symptoms, diagnosis, and prognosis, what the claimant can still do despite his or her impairments, and the claimant's physical and mental restrictions, the statement is an opinion requiring the ALJ to state with particularity the weight given to it and the reasons therefor. *Winschel v. Comm'r of Social Security,* 631 F3d 1176, 1178-79 (11th Cir. 2011). Without such a statement, "it is impossible for a reviewing court to determine whether the ultimate decision on the merits of the claim is rational and supported by substantial evidence." *Id.* (citing *Cowart v. Shweiker,* 662 F.2d 731, 735 (11th Cir. 1981)).

The opinions of treating physicians are entitled to substantial or considerable weight unless good cause is shown to the contrary. *Phillips v. Barnhart,* 357 F.3d 1232, 1240 (11th Cir. 2004). The Eleventh Circuit has held that good cause exists when the: "(1) treating physician's opinion was not bolstered by the evidence; (2) evidence supported a contrary finding; or (3) treating physician's opinion was conclusory or inconsistent with the doctor's own medical records." *Id.* Where an ALJ articulates specific reasons for failing to accord the opinion of a treating or examining physician controlling weight and those reasons are supported by substantial evidence, there is no reversible error. *Moore v. Barnhart*, 405 F.3d 1208, 1212 (11th Cir. 2005).

In this case, the Court finds that the ALJ provided good cause for according only little weight to Dr. Hughes' opinion. Substantial evidence supports the ALJ's determination that Dr. Hughes' treatment notes did not support the physical limitations outlined in his MSS. Dr. Hughes' notes included pain and other symptoms as "reported by patient," and some exam findings of neck or back pain or spasm. (Tr. 549, 552-53, 556, 559-60). However, his physical examinations notes consistently showed Plaintiff appeared healthy; was well-developed, ambulating normally, and in no acute distress; demonstrated a full range of motion in his neck, normal musculoskeletal strength and tone, and had no contractures, malalignment, or bony abnormalities. (Tr., 549, 553, 556, 560). The ALJ found Dr. Hughes' generally normal physical exam findings were inconsistent with the severe limitations suggested in his MSS.

Further, substantial evidence also supported the ALJ's determination that the MSS limitations were not supported by the record as a whole. When Dr. Jacobs assessed "unspecified" backache in December 2010, he concluded on physical examination that "virtually everything looks normal on the back" and appeared to suggest symptom magnification by noting "when I touch his paraspinal muscles he says they hurt, [but] I can feel no masses." (Tr. 582). Dr. Kennedy examined Plaintiff in September 2012 and noted Plaintiff was well developed and well nourished, was in no acute distress; and demonstrated a full range of motion of all joints. (Tr. 428). Dr. Kennedy reviewed x-rays the next day and described them as "unremarkable." (Tr. 429, 467). Dr. Cuberos-Orozco examined Plaintiff in October 2012, and described him as well-developed and in no acute distress. (Tr. 441). Although she noted some rib tenderness, she also his strength was normal and his musculoskeletal system was normal. (Tr. 441-42). Dr. Gomeringer examined Plaintiff in April 2013 and noted Plaintiff's "complaints seem[ed] to wax and wane throughout

the visit" and his physical examination revealed no weakness, muscles wasting, or twitching in the extremities, and full range of motion in all major joints without pain or limitation. (Tr. 446).

In June 2013, Dr. Davis reviewed Plaintiff's May 2013 MRIs as showing "no significant pathology whatsoever." (Tr. 449, 453-54). Dr. Boudreaux examined Plaintiff in June 2013, shortly after a motor vehicle accident, and noted Plaintiff exhibited some tenderness at that time, but Plaintiff also demonstrated a full range of musculoskeletal motion, all senses intact, and normal reflexes, muscle tone, and coordination. (Tr. 459). Dr. Boudreau also noted x-ray results showed "no acute abnormality." (Tr. 461). Dr. Rathur interpreted Plaintiff's June 2013 lumbar MRI to show a disc protrusion at L5-S1 that only "mildly" displaced the left S1 nerve root "without compression." (Tr. 486). Dr. Berdick examined Plaintiff in September 2013, noting "mild" back tenderness, but also a full range of motion in all planes, other joints moved in a full range of motion without difficulty, straight leg raising was negative bilaterally, Plaintiff's gait was normal, and Plaintiff had no motor, sensory, or reflex abnormalities (Tr. 507). Dr. Berdick examined Plaintiff again in August 2014, noting some sacroiliac tenderness and mild restriction in lumber flexion and rotation, but also noting no problems with Plaintiff's extremities, no joint swelling or edema, normal gait, negative straight leg raising bilaterally, and no motor, sensory, or reflex abnormalities. (Tr. 505). Dr. Shah interpreted Plaintiff's MRI in May 2015 to show only "shallow" protrusion T5-T6, with no cord compression. Other disc levels [were] unremarkable." (Tr. 566).

The Court rejects Plaintiff's argument that the ALJ erred by failing to address the ALJ's failure to explicitly address Dr. Hughes' finding that Plaintiff had an abnormality of color vision in the left eye. (Tr. 612). As Defendant notes, nothing in Dr. Hughes' exam findings identifies any color vision problems. Similarly, Plaintiff complains that the MSS limiting Plaintiff's

fingering to one-third of the work day, based on hand tremor and numbness. (Tr. 611). However, while Dr. Hughes' noted Plaintiff's inclusion of "passive tremor" in his list of problems (Tr. 547, 551, 554), the doctor's physical exam findings consistently show "no tremor" (Tr. 553, 560). Moreover, Dr. Hughes' notes do not indicate any reports by Plaintiff or exam findings by Dr. Hughes of hand numbness. (Tr. 545-576). While Plaintiff notes, above, that Plaintiff testified at the October 2015 hearing that he took propanolol for his hand tremors (Tr. 74), Dr. Davis reported in June 2013 that treatment with propranolol had fully resolved Plaintiff's tremor (Tr. 480).

    **c) Whether the ALJ erred by relying on the testimony of the vocational expert regarding job numbers.**

Plaintiff argues that the ALJ erred by relying on the testimony of the vocational expert because the vocational expert based her testimony concerning jobs numbers on data contained in Job Browser Pro. (Doc. 26 p. 26-28). The Court finds that any error the ALJ may have committed by relying on the vocational expert's testimony at step five is harmless. As will be discussed below, substantial evidence supports the ALJ's determination that Plaintiff can return to his past relevant work and is, thus, not disabled. For this reason, the Court will not address Plaintiff's contention that the ALJ erred in his alternative step five finding.

    **d) Whether the ALJ erred by failing to properly evaluate Plaintiff's capacity for work on a regular and continuing basis.**

Plaintiff argues that the ALJ erred by neglecting to address Plaintiff's ability to maintain a regular work schedule and the RFC lacks any limitations related to work schedule even though Dr. Hughes opined that Plaintiff would be absent from work either due to doctor appointments or medical impairments three days a month, for medical reasons would need a 30-minute break every 20 minutes, and would be expected to rest 2 hours in the morning and 3 hours in the

afternoon. (Doc. 26 p. 32). In response, Defendant argues that substantial evidence supported the ALJ's RFC determination and the ALJ appropriately excluded from the RFC limitations Dr. Hughes included in his October 2015 MSS. (Doc. 26 p. 33).

As explained at length above, substantial evidence supports the ALJ's determination that Dr. Hughes' opinion was entitled to little weight. Accordingly, the Court finds no error in the ALJ's decision not to include Dr. Hughes' findings concerning Plaintiff's ability to maintain a regular work schedule.

### e) Whether the ALJ erred by finding that Plaintiff had past relevant work as a crew-truck driver.

Plaintiff argues that the ALJ erred in determining that Plaintiff had past relevant work as a crew-truck driver given that no such job appears in the work history reports. (Doc. 26 p. 34). Plaintiff argues that the past relevant work referred to by the ALJ was performed in 2007-2008 while working for Sports Boats Marine. (Doc. 26 p. 34). Plaintiff argues that his work there was a composite job requiring the ability to perform medium exertional level activities such as mechanic maintenance and detailing. (Doc. 26 p. 35).

In response, Defendant argues that the ALJ properly relied upon the vocational expert's testimony that Plaintiff had past relevant work as a "truck driver, light" and that he was capable of performing such work. (Doc. 26 p. 36-37). Defendant argues that Plaintiff testified that his job consisted solely of driving to transport boats for 10 months and that his position was not a composite job. (Doc. 26 p. 37).

A plaintiff bears the burden of showing that she can no longer perform her past relevant work as she actually performed it, or as it is performed in the general economy. *Waldrop v. Comm'r. of Soc. Sec.*, 379 F. App'x. 948, 953 (11th Cir. 2010) (citing *Jackson v. Bowen*, 801 F.2d 1291, 1293-94 (11th Cir. 1986). Even though a plaintiff has the burden of showing she can

no longer perform her past relevant work, the Commissioner has the obligation to develop a full and fair record. *Schnorr v. Bowen*, 816 F.2d 578, 581 (11th Cir. 1987) (citations omitted). To develop a full and fair record, an ALJ must consider all of the duties of that past relevant work and evaluate a plaintiff's ability to perform the past relevant work in spite of the impairments. *Levie v. Comm'r of Soc. Sec.*, 514 F. App'x. 829, 831 (11th Cir. 2013).

In this case, the Court finds no error in the ALJ's determination that Plaintiff had past relevant work as a crew-truck driver and that Plaintiff was capable of performing this work. At the administrative hearing, Plaintiff testified that his job consisted solely of driving to transport boats for 10 months. When the ALJ asked Plaintiff about the job he had in 2008, Plaintiff replied that he had tried to go back to detailing boats, but "they had me driving again, transporting boats." (Tr. 66). Plaintiff testified that he did this job for 10 months and that as a truck driver he had no other duties besides driving. (Tr. 67-68). Plaintiff further testified that even if a strap came off a boat being transported he was told not even to touch the boats. (Tr. 68). When asked by the ALJ if there was any other physical act to the job besides driving, Plaintiff replied that there wasn't and that "[i]t was basically just destination and pull up, and let the marina do their work, and I would drive home."

A composite job is "one that has significant elements of two or more occupations and, as such, has no counterpart in the DOT. *Paxton v. Colvin*, 2013 WL 1909609, *4 (M.D. Fla. May 8, 2013). Plaintiff's description of his work as a driver shows that it did not require significant elements of two or more occupations. Plaintiff's testimony shows that his work as a truck driver was a separate job from his work as a detailer. Plaintiff has failed to carry his burden of demonstrating he could not return to his work as a truck driver.

**f) Whether the ALJ erred by posing a hypothetical question that did not reflect Plaintiff's ADHD.**

Plaintiff argues that the ALJ erred in posing a hypothetical question to the vocational expert that did not reflect Plaintiff's ADHD, even though Dr. Chang and Dr. Hughes identified limitations imposed by Plaintiff's ADHD and depression. (Doc. 26 p. 38). In response, Defendant argues that the ALJ properly determined that Plaintiff's ADHD was not a severe impairment and committed no error by not including additional limitations in the RFC. (Doc. 26 p. 41).

In this case, the Court finds no error in the hypothetical question posed to the vocational expert. In his decision, the ALJ determined that Plaintiff's ADHD was not a severe impairment, noting that his mental conditions imposed no limitation of daily activities and only mild limitations related to social functioning and concentration, persistence or pace. (Tr. 41). The ALJ explained in his decision that he gave great weigh to the opinions of the state agency psychological consultant's mental assessments and opinions that Plaintiff's mental impairments were non-severe. (Tr. 45). As explained above, the ALJ provided good cause for providing little weight to Dr. Hughes' opinion concerning Plaintiff's limitations.

In order for a VE's testimony to constitute substantial evidence, the ALJ's hypothetical question must comprise all of the claimant's impairments. *Jones v. Apfel*, 190 F.3d 1224, 1229 (11th Cir. 1999). Plaintiff has failed to demonstrate that the ALJ's RFC determination and the hypothetical question reflecting the RFC failed to comprise all of Plaintiff's impairments.

**g) Whether the ALJ erred by failing to evaluate the degree to which Plaintiff would be expected to be off-task.**

Plaintiff argues that the ALJ failed to properly evaluate Plaintiff's likelihood of being off task, as Dr. Hughes predicted Plaintiff would be off-task from 50% to 60% of the time. (Doc. 26 p. 42). Plaintiff contends that given Dr. Hughes opinion, it was erroneous for the ALJ to not

reference Plaintiff's off-task behavior in the hypothetical question to the vocational expert. (Doc. 26 p. 42). In response, Defendant argues that the ALJ properly gave little weight to Dr. Hughes' opinion and the ALJ did not err by failing to include Dr. Hughes' limitation findings in the hypothetical question. (Doc. 26 p. 44).

In his decision, the ALJ acknowledged that Dr. Hughes checked a box on a form indicating that Plaintiff would be off task for 50 to 60 percent of the workday, but determined that such a limitation was unsupported by Dr. Hughes' treatment notes or the record as a whole. As explained above, substantial evidence supports the ALJ's decision to accord little weight to Dr. Hughes' opinion. Accordingly, the Court finds no error in the ALJ's decision to not include Dr. Hughes' limitation findings concerning Plaintiff's ability to stay on task.

### III. Conclusion

The decision of the Commissioner is **AFFIRMED**. The Clerk of the Court is directed to enter judgment consistent with this opinion and, thereafter, to close the file.

**DONE** and **ORDERED** in Fort Myers, Florida on September 21, 2018.

_____
DOUGLAS N. FRAZIER
UNITED STATES MAGISTRATE JUDGE

Copies furnished to:

Counsel of Record
Unrepresented Parties